estate of Mr. McDonald was error on the part of Mr. Stallo, and that it can give no possible character to the note made in January, 1910.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except SMITH, P. J., not voting.

---

(169 App. Div. 388)

### In re KENT'S WILL. (No. 268–133.)

(Supreme Court, Appellate Division, Fourth Department.  October 6, 1915.)

1. EVIDENCE. ⬡➡317—HEARSAY EVIDENCE.

In proceedings to probate a will, disclosing that one clause thereof and part of another have been cut out, the testimony of a witness as to declarations made by testatrix, subsequent to the execution of the will, as to the gifts made in the missing parts of the will, was inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. ⬡➡317.]

2. TRIAL ⬡➡91—EVIDENCE—MOTION TO STRIKE.

Where a party was not prejudiced by failure to object to incompetent evidence when offered, and if objection had then been made he could not have presented other evidence, a motion to strike out the evidence should have been granted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 242–244, 252; Dec. Dig. ⬡➡91.]

3. WILLS ⬡➡302—CONTENTS OF MISSING CLAUSES—EVIDENCE—SUFFICIENCY.

In proceedings to probate a will, disclosing that one clause and part of another had been cut out, the testimony of a witness that about three months after the date of the will testatrix told witness that she had left a legacy of $2,500 to each of two persons, who were also to receive one-fourth of the residue, did not support a finding that the missing parts of the will contained a legacy of $2,500 each to the two persons named, and that each of them should have one-fourth of the residue.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 575, 581, 700–710; Dec. Dig. ⬡➡302.]

4. WILLS ⬡➡234—PROBATE—OMITTED CLAUSES—EVIDENCE OF CONTENTS.

Where, in proceedings to probate a will, disclosing that a clause thereof and part of another clause had been cut out, the contents of the omitted parts were proved, the will, including the missing provisions, should be admitted to probate; but in case the evidence did not show the contents of the missing parts, the part of the will remaining should be probated, unless it appeared that the missing parts affected or altered the remaining parts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 563; Dec. Dig. ⬡➡234.]

5. CONVERSION ⬡➡15—CONVERSION OF REAL PROPERTY INTO MONEY—CONSTRUCTION OF WILL.

A will containing an imperative direction to convert real property into money must be construed as a will of personalty.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. ⬡➡15.]

6. WILLS ⬡➡286—CONSTRUCTION—RESIDUARY ESTATE.

Where a will disclosed that a clause alleged to contain bequests of a specified ·sum to alleged beneficiaries was cut out, and the proof failed

to show the contents of the clause, the residuary estate was increased because the omitted clause failed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 647-650; Dec. Dig. ☞286.]

7. WILLS ☞449—CONSTRUCTION—"RESIDUARY GIFT."

Where the contents of the part of the residuary clause of a will which was cut out cannot be proved, there will be intestacy as to that part, for a lapsed or ineffectual gift of a part of the residue does not become a part of the remaining residuary gift, though it carries not only everything not in terms disposed of, but everything that turns out to be not well disposed of.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. ☞449.

For other definitions, see Words and Phrases, First and Second Series, Residuary.]

Robson, J., dissenting.

Appeal from Surrogate's Court, Onondaga County.

Proceeding for the proving of the will of Ursula A. Kent, deceased, in which Betsey C. Adams appeared as contestant. From a decree of the surrogate (89 Misc. Rep. 16, 152 N. Y. Supp. 557), admitting to probate the paper propounded, including missing parts thereof, the contestant appeals. Reversed, and trial by jury ordered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Daniel A. Pierce, of Syracuse, for appellant.
Joseph B. Murphy, of Syracuse, for respondents.
A. H. Cowie, of Syracuse, for executor.

FOOTE, J. On March 9, 1911, Ursula A. Kent made her last will and testament, consisting of 14 separately numbered paragraphs. A few days after her death on July 10, 1913, the will was found locked in the drawer of a bureau in what had been her sleeping room. It then appeared that the paragraph numbered 6 and a part of the paragraph numbered 10, being the residuary clause, had been cut and completely removed from the will.

The learned surrogate has found as a fact that, if these clauses were cut from the will by the testatrix in her lifetime, it was with the intention of revoking such clauses only, and not of revoking the will as a whole. He has also found that the sixth clause contained a legacy of $2,500 each to Ross L. King and Bruce L. King, and that the missing part of the tenth or residuary clause gave to each of these men one-fourth of the residue of her estate. He has held as matter of law that the cutting of these two clauses from the will did not effect their revocation, and he has admitted the will to probate, including the missing clauses as he finds their contents to have been.

Betsey C. Adams, one of the heirs at law and next of kin of testatrix, filed exceptions to the surrogate's findings of fact as to the contents of the missing clauses, on the ground that there was no evidence to support such findings, and to the conclusions of law, and has appealed to this court both upon the law and the facts.

The missing parts cut from the will have not been found. Mr. Cook, the attorney who drew the will, could recollect that the missing sixth clause contained a money legacy for some amount in favor of Ross King, and that its amount was "in the thousands." Further than this, he had no recollection as to the contents of the missing parts. The testimony upon which the learned surrogate based his finding as to the contents of these missing parts was given by Margaret Gibbs, who was housekeeper in a college fraternity chapter house next door to Mrs. Kent's residence. She had known Mrs. Kent for about six years and was on friendly terms with her. They saw each other frequently at one house or the other. Mrs. Gibbs testifies that, about three months after the date of the will at Mrs. Kent's house, Mrs. Kent told her that she had, by her will, left a legacy of $2,500 to Ross King and the same amount to his brother, Bruce King, and they were to have one-fourth of what was left after the other legatees were paid. She also testifies that there were several other similar conversations before Mrs. Kent's death, in which Mrs. Kent made the same statement in substance.

[1] No objection was made to this testimony by appellant's counsel at the time it was given, but at a subsequent hearing, before the submission of the case, a motion was made to strike it out as incompetent and no part of the res gestæ. This motion the surrogate denied "for the present," with a statement that "before disposing of the case, or at the time of disposing of it, if I think it should be struck out, I may then do so." In his written opinion the surrogate holds that the objection to Mrs. Gibbs' testimony came too late, and for that reason adhered to his ruling refusing to strike it out. On that testimony, with the testimony above referred to of Mr. Cook, he has based his findings as to the contents of the missing parts of the will. The testimony of Mrs. Gibbs was clearly hearsay and incompetent. Smith v. Keller, 205 N. Y. 39, 98 N. E. 214; Lipphard v. Humphrey, 209 U. S. 264, 28 Sup. Ct. 561, 52 L. Ed. 783, 14 Ann. Cas. 872; Matter of Kennedy, 53 App. Div. 105, 65 N. Y. Supp. 879, and 167 N. Y. 163, 60 N. E. 442; Clark v. Turner, 50 Neb. 290, 69 N. W. 843, 38 L. R. A. 433, and note.

[2] If this testimony had been objected to when offered, it would have been the duty of the surrogate, in view of the above authorities, to sustain the objection and exclude the testimony. It is not claimed that the proponent of the will was in any way prejudiced by the delay in making the objection, or that, if the objection had been seasonably made, it could have been at the time obviated, or other evidence produced to prove the contents of the missing clauses of the will. Under these circumstances, we think the surrogate should have granted the motion to strike out Mrs. Gibbs' testimony. Miller v. Montgomery, 78 N. Y. 282.

[3] We are also of opinion that the testimony of Mrs. Gibbs, if allowed to remain in the case, is not of sufficient probative value to support the findings as to the contents of the missing clauses, and that the surrogate's findings of fact Nos. 5 and 6 as to the contents of the missing clauses should be disapproved.

[4] Those conclusions will require a new trial, where the contents of the parts excised from the will may be shown by competent evidence. In that case, the will should be probated, including the missing clauses as still a part of the will and unrevoked. Lovell v. Quitman, 88 N. Y. 377, 42 Am. Rep. 254, and cases collected in note to Hartz v. Sobel, 38 L. R. A. (N. S.) 797. In case such evidence is not forthcoming, then we think that part of the will which remains should be probated.

[5, 6] The general form of the will is such that it is reasonably apparent that the missing sixth clause contained a money legacy, as did those which precede and follow it. The estate is large enough (over $30,000) to pay all the legacies and leave more than one-half for the residuary. There is an imperative direction to convert the real property into money, and it must be construed as a will of personalty. If the sixth clause fails, the only effect is to increase the residue. The part of the tenth or residuary clause which remains and was not cut out gives one-quarter of the residue to the Syracuse Home Association and one-quarter to the Onondaga Orphan Asylum.

In jurisdictions where, like our own, attempted cancellation of particular clauses by their obliteration is ineffectual to revoke such clauses, the weight of authority seems to favor the probate of that part of the will which remains, even if the contents of the obliterated parts cannot be ascertained, unless it can be seen that the missing parts would affect or alter the remaining parts; while in jurisdictions where obliteration of a clause operates to revoke it, as in England, the remainder of the will stands exactly as if the revocation had been by codicil. Tarbell v. Forbes, 177 Mass. 238, 58 N. E. 873; Miles' Appeal, 68 Conn. 237, 36 Atl. 39, 36 L. R. A. 176; Doherty v. Dwyer, L. R. 25 Eq. 297 Tr.; Woodward v. Goulstone, 11 L. R. App. Cases, 469 (1886); Re Patterson, 155 Cal. 626, 102 Pac. 941, s. c., 26 L. R. A. (N. S.) 654, 132 Am. St. Rep. 116, 18 Ann. Cas. 625, and cases cited and reviewed in note.

[7] It is evident that one-half the residue was given by that part of the tenth clause which is missing. If its contents cannot be ascertained, then there will be intestacy as to this one-half the residue, for a lapsed or ineffectual gift of a portion of the residue does not fall into or become a part of the remaining residue. Kerr v. Dougherty, 79 N. Y. 327; Beekman v. Bonsor, 23 N. Y. 298, 80 Am. Dec. 269; Booth v. Baptist Ch., 126 N. Y. 215, 28 N. E. 238; Howland v. Clendenin, 134 N. Y. 305, 31 N. E. 977. It would seem, however, that if the legacy in the missing sixth clause fails, because its amount and donee cannot be ascertained, the effect should be that its unknown amount would sink into the residue, as in the case of a lapsed legacy. Re King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; Langley v. Westchester Trust Co., 180 N. Y. 326, 73 N. E. 44, and other cases cited in the valuable note to Galloway v. Darby, 44 L. R. A. (N. S.) 782.

We should have no doubt of the application of the rule of these cases, prevailing as it does in England and most of our states, were it not for the recent decision in Osburn v. Rochester Trust & Safe

Deposit Co., 209 N. Y. 54, 102 N. E. 571, 46 L. R. A. (N. S.) 983,
Ann. Cas. 1915A, 101. The will in that case contained a general resid-
uary clause. Some time after it was made the testatrix executed a
codicil, by which she gave a legacy of $1,000 to a church corporation
not mentioned in her will. Before her death, testatrix destroyed this
codicil with intent to revoke it, but not to revoke the will. The prin-
cipal question in the case considered in the opinion and in briefs of
counsel was as to whether the destruction of the codicil animo revo-
candi revoked the will. It was held that it did not. But as to the
effect of the codicil and its revocation upon the residuary clause of
the will it was said:

"When the codicil modified the will by providing for an additional legacy be-
fore creation of the residuary estate, it modified and revoked the will to that
extent. This revocation was consummated at the moment when the codicil was
executed and published, and thereafter the will was to that extent annulled.
After this revocation had thus been consummated by the execution of the
codicil, the will could not be restored as to its original form and tenor simply
by the revocation of the codicil. A revocation of the revocation could not
thus be accomplished. The effect of this is that the testatrix died intestate as
to $1,000."

It appears from the briefs of counsel that the attention of the court
was not called to the numerous American and English cases and text-
books, where the rule is stated to be in substance that a testator is
presumed to intend a general residuary clause as a sort of a "catch-
all" to absorb all invalid, ineffectual, or lapsed legacies or devises,
and that legacies and devises are given away from the residuary legatee
or devisee only for the benefit of the particular legatee or devisee
named, failing which for any cause the intention is not intestacy but
absorption into the residue. We quote from 1 Jarman on Wills, 716:

"A residuary gift of personal estate carries, not only everything not in
terms disposed of, but everything that in the event turns out to be not well
disposed of. A presumption arises for the residuary legatee against every
one except the particular legatee, for a testator is supposed to give his person-
alty away from the former only for the sake of the latter."

See, also, 2 Redfield on the Law of Wills, 116 et seq.; 1 Underhill
on Wills, §§ 335, 336; Cruikshank v. Home for the Friendless, 113
N. Y. 337, 21 N. E. 64, 4 L. R. A. 140; Matter of Bonnet, 113 N. Y.
522, 21 N. E. 139.

In the Cruikshank Case the rule was applied, although the devise
which lapsed was one specially created by testator by a codicil which
failed to take effect, and yet the lands so devised and so taken out
of the residuary clause contained in the will were held to be restored
to the residue.

It cannot be assumed that it was the intention of the court in the
Osburn Case to overrule the cases in this state above referred to, or
that the court was not familiar with the rule of these cases. It may
be difficult to reconcile that case on principle with the earlier cases.
However that may be, we think the Osburn Case is not controlling in
our case. Here there was no codicil taking anything away from the
residue created by the will. The testatrix's intention to dispose of some
part of her estate by the sixth clause of her will fails simply because

her intention in that respect cannot now be ascertained. If the legatee named in that clause had died before the testatrix, the amount of her intended legacy would fall into the residue in accordance with her presumed intention. If the legacy cannot be paid, because its purport cannot be ascertained, we think we must presume the same intention in respect of the residuary clause, and so that its amount, whatever it was, falls into the residue, of which one-half will be distributed to residuary legatees whose names still remain in the will. As to the other one-half, unless the missing part of the residuary clause is proved, there will necessarily be intestacy.

The decree of the Surrogate's Court should be reversed, and as this proceeding was pending prior to the enactment of chapter 443 of the Laws of 1914, amending the Code of Civil Procedure as to the practice in Surrogate's Court, we are required by section 2771 of the Code, as enacted by that act, to follow the practice as it existed prior to September 1, 1914. Hence, under the provisions of section 2588 of the Code as it existed before the amendments of 1914, we must direct a trial by jury of questions of fact arising upon the issues between the parties. Accordingly, the decree of the surrogate is reversed, with costs to the appellant to abide the final award of costs, and a trial by jury is ordered to take place, at a Trial Term of the Supreme Court in Onondaga county to be specified in the order, of the following questions of fact:

(1) Did the will propounded for probate at the time it was executed contain clauses or provisions additional to those now appearing therein?

(2) What were the contents of such additional clauses or provisions?

(3) Were such additional clauses or provisions cut or removed from the will by testatrix, or by any other person in her presence, by her direction or consent, for the purpose or with the intent to revoke the will?

KRUSE, P. J., and LAMBERT and MERRELL, JJ., concur. ROBSON, J., dissents.